IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CUSTARD, a California corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>WARNER MUSIC GROUP CORP., a Delaware corporation, WARNER-ELEKTRA-ATLANTIC CORPORATION, a Delaware Corporation, ELEKTRA ENTERTAINMENT GROUP, INC., a Delaware corporation, and ATLANTIC RECORDING CORPORATION, a Delaware corporation,<br><br>    Defendants. | No. 08-CV-2170<br><br>**ANSWER** |

Defendants Warner Music Group Corp., Warner-Elektra-Atlantic Corporation, Elektra Entertainment Group Inc., and Atlantic Recording Corporation, by and through their undersigned attorneys, Jenner & Block LLP, hereby answer the March 4, 2008 complaint (the "Complaint") of plaintiff Custard (the "Plaintiff") as follows:

## NATURE OF ACTION

1.  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Complaint, except admit that Atlantic Recording Corporation ("Atlantic") distributed James Blunt's album *Back to Bedlam* and that Defendants are all affiliated with Atlantic.

2.  Defendants deny the allegations in paragraph 2 of the Complaint.

3.  Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 of the Complaint, except admit that the album *Back to Bedlam* was delivered to Atlantic and that Blunt was under contract to Custard.

4. Defendants deny the allegations in paragraph 4 of the Complaint, except admit that *Back to Bedlam* was released in the United Kingdom in 2004 and in the United States in 2005, that *Back to Bedlam* has sold over 11 million copies worldwide, that *Back to Bedlam* is one of Atlantic's best selling albums in the past decade, and that the single *You're Beautiful* reached the number one spot on various music charts. Plaintiff's allegation as to Defendants' gross revenues on *Back to Bedlam* is entirely irrelevant to the claims asserted and therefore requires no response.

5. Defendants deny the allegations in paragraph 5 of the Complaint.

## JURISDICTION AND VENUE

6. In response to the allegations in paragraph 6 of the Complaint, Defendants admit that this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

7. Defendants deny the allegations in paragraph 7 of the Complaint, except admit that venue is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

8. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 of the Complaint.

9. Defendants admit that Atlantic is a Delaware corporation with its principal place of business at 1290 Avenue of the Americas, New York, New York 10104.

10. Defendants deny the allegations in paragraph 10 of the Complaint, except admit that Elektra Entertainment Group Inc. ("Elektra") is a Delaware Corporation with its principal place of business at 75 Rockefeller Plaza, New York, New York 10019 and that Atlantic is the successor-in-interest to Elektra with regard to the Label Agreement.

11. Defendants deny the allegations in paragraph 11 of the Complaint, except admit that the principal place of business of Warner-Elektra-Atlantic Corporation ("WEA") is 75 Rockefeller Plaza, New York, New York 10019.

12. Defendants deny the allegations in paragraph 12 of the Complaint, except admit that Warner Music Group Corp. ("WMG") is a Delaware corporation with its principal place of business at 75 Rockefeller Plaza, New York, New York 10019.

## FACTUAL BACKGROUND

13. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 of the Complaint.

14. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 of the Complaint.

15. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Complaint, except admit that Blunt had not been signed by Defendants' United Kingdom affiliate prior to 2003.

16. Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the Complaint.

17. Defendants deny the allegations in paragraph 17 of the Complaint, except admit that the agreement between Custard and Elektra (the "Label Agreement") was signed as of September 30, 2003 and that Atlantic is the successor-in-interest to Elektra for purposes of the Label Agreement.

18. In response to the allegations in paragraph 18 of the Complaint, defendants respectfully refer the court to Exhibit C for a full and accurate recitation of the parties' rights and responsibilities under the Label Agreement.

19. Defendants deny the allegations in paragraph 19 of the Complaint, except admit that a number of drafts of the Label Agreement were exchanged.

20. In response to the allegations in paragraph 20 of the Complaint, Defendants respectfully refer the Court to Exhibit C for a full and accurate recitation of the terms and conditions of the Label Agreement.

21. Defendants deny the allegations in paragraph 21 of the Complaint.

22. Defendants deny the allegations in paragraph 22 of the Complaint.

23. Defendants deny the allegations in paragraph 23 of the Complaint.

24. Defendants deny the allegations in paragraph 24 of the Complaint, except admit that the Label Agreement was effective as of September 30, 2003.

25. Defendants deny the allegations in paragraph 25 of the Complaint.

26. Defendants deny the allegations in paragraph 26 of the Complaint.

27. Defendants deny the allegations in paragraph 27 of the Complaint, except admit that *Back to Bedlam* was released in the United Kingdom on October 11, 2004.

28. Defendants deny the allegations in paragraph 28 of the Complaint, except admit that *Back to Bedlam* was released in the United States on October 4, 2005.

29. In response to the allegations in paragraph 29 of the Complaint, defendants respectfully refer the Court to Exhibit A for a full and accurate recitation of the royalty provisions of the Blunt Deal Memo.

30. Defendants deny the allegations in paragraph 30 of the Complaint and respectfully refer the Court to Exhibit C for a full and accurate recitation of the terms and conditions of the Label Agreement.

31.     Defendants deny the allegations in paragraph 31 of the Complaint, except admit that the Artist Term Contract was effective as of September 30, 2003.

32.     Defendants deny the allegations in paragraph 32 of the Complaint and respectfully refer the Court to Exhibit B, Exhibit C and Exhibit E for a full and accurate recitation of the terms and conditions of the Artist Term Contract, the Label Agreement, and the Termination Agreement.

33.     Defendants deny the allegations in paragraph 33 of the Complaint, except admit that *Back to Bedlam* sold over 11 million album units worldwide. Plaintiff's allegation as to Defendants' gross revenues on *Back to Bedlam* is entirely irrelevant to the claims asserted and therefore requires no response.

34.     Defendants deny the allegations in paragraph 34 of the Complaint, except admit that Atlantic and James Blunt renegotiated certain terms of the Artist Term Contract.

35.     Defendants deny the allegations in paragraph 35 of the Complaint, except admit that Exhibit D is a copy of a contract between Atlantic and James Blunt and respectfully refer the Court to the language in Exhibit D for a full and accurate recitation of the terms and conditions of that agreement and to Exhibit C for a full and accurate recitation of the terms and conditions of the Label Agreement.

36.     Defendants deny the allegations in paragraph 36 of the Complaint except admit that there were written communications exchanged between attorneys for the parties relating to the issues addressed in this action and respectfully refer the Court to Exhibit 1 and Exhibit 2 attached to the Defendants' Answer for an accurate account of the written communication between Custard and the Defendants.

37. Defendants deny the allegations in paragraph 37 of the Complaint.

38. Defendants deny the allegations in paragraph 38 of the Complaint.

39. Defendants deny the allegations in paragraph 39 of the Complaint.

40. Defendants deny the allegations in paragraph 40 of the Complaint.

41. Defendants deny the allegations in paragraph 41 of the Complaint.

42. Defendants deny the allegations in paragraph 42 of the Complaint.

43. Defendants deny the allegations in paragraph 43 of the Complaint, except admit that Custard's Royalty Statement for the period January 1, 2006 through June 30, 2006 was sent to Custard in October 2006.

44. Defendants deny the allegations in paragraph 44 of the Complaint.

## ANSWER TO CLAIMS FOR RELIEF

## FIRST CLAIM

45. Defendants incorporate by reference their responses to paragraphs 1-44 as if set forth herein.

46. In response to the allegations in paragraph 46 of the Complaint, Defendants respectfully refer the Court to Exhibit C for a full and accurate recitation of the terms and conditions of the Label Agreement.

47. Defendants deny the allegations in paragraph 47 of the Complaint and respectfully refer the Court to Exhibit A for a full and accurate recitation of the terms and conditions of the Blunt Deal Memo.

48. Defendants deny the allegations in paragraph 48 of the Complaint, and respectfully refer the Court to Exhibit C for a full and accurate recitation of the terms and conditions of the Label Agreement.

49. Defendants deny the allegations in paragraph 49 of the Complaint and respectfully refer the Court to Exhibit D for the current royalty rates payable as Artist's Share of Royalties and to Exhibit C for the method of calculating the Production Share of Royalties.

50. Defendants deny the allegations in paragraph 50 of the Complaint.

51. Defendants deny the allegations in paragraph 51 of the Complaint.

## SECOND CLAIM

52. Defendants incorporate by reference their responses to paragraphs 1-51 as if set forth herein.

53. Defendants admit that Custard and Atlantic are the current parties to the Label Agreement.

54. Defendants deny the allegations in paragraph 54 of the Complaint.

55. Defendants deny the allegations in paragraph 55 of the Complaint.

56. Defendants deny the allegations in paragraph 56 of the Complaint.

## THIRD CLAIM

57. Defendants incorporate by reference their responses to paragraphs 1-56 as if set forth herein.

58. Paragraph 58 states a conclusion of law to which no response is required.

59. Defendants deny the allegations in paragraph 59 of the Complaint.

60. Defendants deny the allegations in paragraph 60 of the Complaint.

## FOURTH CLAIM

61. Defendants incorporate by reference their responses to paragraphs 1-60 as if set forth herein.

62. Defendants incorporate by reference their responses to paragraphs 1-61 as if set forth herein.

63. Defendants deny the allegations in paragraph 63 of the Complaint and respectfully refer the Court to Exhibit C for a full and accurate recitation of the terms and conditions of the Label Agreement.

64. Defendants deny the allegations in paragraph 64 of the Complaint and respectfully refer the Court to Exhibit C for a full and accurate recitation of the terms and conditions of the Label Agreement.

65. Defendants deny the allegations in paragraph 65 of the Complaint, except admit that between January 1, 2006 and the present the Production Share of Royalties as defined in the Label Agreement has amounted to over two million dollars.

66. Defendants deny the allegations in paragraph 66 of the Complaint.

67. Defendants deny the allegations in paragraph 67 of the Complaint.

68. Defendants deny the allegations in paragraph 68 of the Complaint.

69. Defendants deny the allegations in paragraph 69 of the Complaint.

70. Defendants deny the allegations in paragraph 70 of the Complaint.

### **FIFTH CLAIM**

71. Defendants incorporate by reference their responses to paragraphs 1-70 as if set forth herein.

72. Defendants deny the allegations in paragraph 72 of the Complaint, except admit that Custard and Atlantic are parties to the Label Agreement.

73. Defendants deny the allegations in paragraph 73 of the Complaint, and respectfully refer the Court to Exhibit B and Exhibit C for a full and accurate

recitation of the terms and conditions of the Artist Term Contract and the Label Agreement.

74. Defendants deny the allegations in paragraph 74 of the Complaint.

75. Defendants deny the allegations in paragraph 75 of the Complaint.

## DEFENSES

### FIRST DEFENSE

Plaintiff's allegations fail in whole or in part to state a claim upon which relief may be granted.

### SECOND DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

### THIRD DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrine of estoppel.

### FOURTH DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrine of waiver.

### FIFTH DEFENSE

Plaintiff's claims are barred in whole or in part because defendants have already made all payments to which the Plaintiff is legally entitled.

### SIXTH DEFENSE

Any harm alleged to have been suffered by Plaintiff is the result of its own acts or omissions.

WHEREFORE, Defendants respectfully request that the Court:

A. Dismiss Plaintiff's Complaint in its entirety with prejudice and award judgment to Defendants;

B.        Award Defendants their reasonable costs and attorneys' fees incurred in having to defend this action; and

C.        Award Defendants such other and further relief as the Court deems just and proper.

| | |
|---|---|
| Dated:  New York, New York | Respectfully submitted, |
| April 7, 2008 | JENNER & BLOCK LLP |
| | By:  s/ Andrew H. Bart |
| | Andrew H. Bart (AB-6724)<br>919 Third Avenue, 37th Floor<br>New York, New York  10022<br>(212) 891-1600<br>*Attorneys for Defendants Warner Music Group Corp., Warner-Elektra-Atlantic Corporation, Elektra Entertainment Group Inc., and Atlantic Recording Corporation.* |

**CERTIFICATE OF SERVICE**

  I, Andrew H. Bart, do hereby certify that on the 7th day of April 2008 I caused the within **Answer** to be filed via the Southern District of New York's Electronic Case Filing system and caused the same to be served via U.S. First Class mail delivery upon *Peter D. Raymond, Reed Smith LLP*, 599 Lexington Avenue, New York, New York 10022 by having a true and correct copy of the same wrapped in a postage-paid envelope and deposited into the care and custody of the United States Postal Service.

  I, Andrew H. Bart, do hereby additionally certify that on this 15th day of April 2008 I caused the within **Answer** to be re-filed with attached **Exhibits** via the Southern District of New York's Electronic Case Filing system and caused the same to be served via U.S. First Class mail delivery upon *Peter D. Raymond, Reed Smith LLP*, 599 Lexington Avenue, New York, New York 10022 by having a true and correct copy of the same wrapped in a postage-paid envelope and deposited into the care and custody of the United States Postal Service.

              Respectfully submitted,

              JENNER & BLOCK LLP

              By:   s/ Andrew H. Bart
              Andrew H. Bart (AB-6724)
              Jenner & Block LLP
              919 Third Avenue, 37th Floor
              New York, NY 10022
              212-891-1600

              *Attorneys for Defendants Warner Music Group Corp., Warner-Elektra-Atlantic Corporation, Elektra Entertainment Group Inc., and Atlantic Recording Corporation.*

# ReedSmith

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
212.521.5400
Fax 212.521.5450

**Peter D. Raymond**
Direct Phone: 212.549.0364
Email: praymond@reedsmith.com

June 12, 2007

**BY HAND AND FEDERAL EXPRESS**

Received

JUN 1 2 2007

Paul Robinson

Atlantic Recording Corporation
(Formerly Elektra Entertainment Group Inc.)
1290 Avenue of the Americas
New York, NY 10104

Attention:  Michael Kushner
            Senior VP, Business Affairs

            Senior VP and General Counsel

Warner Music Group
Legal Department
75 Rockefeller Plaza
New York, NY 10019

Attention:  Paul M. Robinson
            General Counsel

Re:  Label Agreement dated September 30, 2003 Between Elektra and Custard

Dear Sirs:

This firm represents Custard, a California corporation ("Custard"). We are writing to notify you pursuant to Paragraphs 10(a) and 11 of the Agreement dated September 30, 2003 between Elektra and Custard, as amended (the "Label Agreement") that Custard objects to the royalty statements sent to Custard by Atlantic covering the period from January 1, 2006 through September 28, 2006 (the "Royalty Period") which provide for a Production Share of Royalties of 4.1% for the entire Royalty Period. This is significantly below the rate required by the Label Agreement. We estimate that Custard is entitled to more than $1,700,000 in additional royalties for the Royalty Period, and we demand that you immediately deliver to Custard revised royalty statements and payment of all funds due thereunder based on the following.

Custard and Elektra (Atlantic's predecessor) negotiated the Label Agreement pursuant to which artists would be designated by Custard for possible record deals. James Blunt was one of the artists Custard signed and designated under the Label Agreement. As you know, this album went on to gross over $100 million dollars for Atlantic and be one of the most important and profitable albums for the entire Warner Music Group in the last five years.

NEW YORK ♦ LONDON ♦ LOS ANGELES ♦ PARIS ♦ SAN FRANCISCO ♦ WASHINGTON, D.C. ♦ PHILADELPHIA ♦ PITTSBURGH ♦ OAKLAND
MUNICH ♦ PRINCETON ♦ NORTHERN VIRGINIA ♦ WILMINGTON ♦ NEWARK ♦ BIRMINGHAM, U.K. ♦ CENTURY CITY ♦ RICHMOND

reedsmith.com

NYLIB-392929.9-PDRAYMON

Atlantic Recording Corporation
(Formerly Elektra Entertainment Group Inc.)
June 12, 2007
Page 2

**ReedSmith**

The royalty arrangement established in the Label Agreement provides that the Basic U.S. Royalty Rate is 20.1%. Since James Blunt was to receive 13% as the Artist's Share of Royalties, Custard was to receive the remaining 7.1% as the Production Share of Royalties (Label Agreement, Paragraph 9[a] and Appendix A; Blunt Artist Term Contract dated as of September 30, 2003). Without the approval or consent of Custard, Atlantic subsequently chose to renegotiate Blunt's royalty rate and agreed to pay him 16% rather than 13%. In addition, without any authority in the Label Agreement or at law, Atlantic agreed to give Blunt the 16% <u>retroactive</u> to January 1, 2006 and to take the additional 3% from Custard's share, notwithstanding that the amendment with Blunt providing for that change was not executed during the Royalty Period. Based on this unilateral action by Atlantic, your royalty statements provide for only a 4.1% royalty to Custard for the Royalty Period.

Irrespective of whether Atlantic had the right to unilaterally re-negotiate with the Artist, the Label Agreement gave Atlantic no right to make this change retroactively, to Atlantic's self-serving enrichment, and deprive Custard of the difference during the Royalty Period. Custard's royalties at 7.1% were fully <u>earned</u> and <u>due</u> for the Royalty Period before the Blunt Artist Term Contract amendment was executed. Atlantic had no right to appropriate Custard's earned royalties by unilaterally applying a lower percentage retroactively. Indeed, this tactic reflects bad faith and is completely unjustified. Neither the Label Agreement nor any industry practice entitled you to misappropriate Custard's royalties in this subterfuge. Accordingly, Custard is entitled to its full 7.1% Production Share for the Royalty Period.

Your actions following the Royalty Period are also improper and in violation of Paragraph 3(a) of Appendix A of the Label Agreement. That section provides that in no circumstance can the Artist's Share of Royalties exceed 15.1%. Therefore, should Atlantic have the right to reduce Custard's Production Share of Royalties, such royalties could not be reduced to lower than 5% payable to Custard (20.1% minus 15.1%). By raising the Artist's Share of Royalties to 16%, and using this increase to reduce the Production Share of Royalties to 4.1%, you have breached this provision of the Label Agreement as well. We hereby demand that you confirm to us that you will deliver to Custard revised royalty statements for all royalty periods subsequent to the Royalty Period in accordance with the above.

Furthermore, since U.S. full retail price sales of Blunt's album have exceeded 2,500,000 units, we demand that you enter into a good faith negotiation with Custard pursuant to Paragraph 8 of the Label Agreement with respect to the percentage of Custard's net proceeds interests after this threshold was reached. This right was clearly granted in paragraph 8 of the Label Agreement and was not extinguished by the parties in any document, including the July 1, 2004 Release Agreement. It is standard practice under such arrangements for the production company to receive a 50% net proceeds interest when such unit sales are achieved. Therefore, until an arrangement is reached through good faith negotiations, we expect that all future accountings will be on a 50/50 profit split basis, including, without limitation, royalties from record one on all worldwide sales of the new Blunt album.

We demand your immediate response to these points and issuance of revised royalty statements, as well as payment of all additional monies due, with interest, and proposed dates and times for the negotiation required by Paragraph 8 of the Label Agreement. If we do not hear from you within a reasonable period, our clients will exercise appropriate legal remedies to enforce their rights under the Label Agreement.

NYLIB-392929.9-PDRAYMON

Atlantic Recording Corporatic
(Formerly Elektra Entertainment Group Inc.)
June 12, 2007
Page 3

**ReedSmith**

  We are also advised that Stephen Coates, the accountant who has been auditing all royalty statements to Custard on behalf of our client, is attempting to submit audit claims to Atlantic, but you have frustrated his attempts by failing to provide requested information. Be advised that your continued failure to cooperate and satisfactorily modify the royalty payments in accordance with the audit will result in additional legal claims.

  The actions of your company have been carefully calculated in bad faith to deprive our client of its rightful share of monies. Pursuant to our client's instructions, we intend to rectify those actions.

  This letter is written without prejudice to, or waiver of, Custard's rights and remedies, all of which are expressly reserved.

       Sincerely,

       Peter D. Raymond

PDR:dc

cc: Linda Perry
   Katrina Sirdofsky
   Brian Rohan, Esq.
   Stephen E. Sessa, Esq.
   Fredric W. Ansis, Esq.

NYLIB-392929.9-PDRAYMON

**JENNER&BLOCK**

July 3, 2007

| | Jenner & Block LLP | Chicago |
| | 919 Third Avenue | Dallas |
| | 37th Floor | New York |
| | New York, NY 10022 | Washington, DC |
| | Tel 212-891-1600 | |
| | www.jenner.com | |

**VIA FACSIMILE**

Peter D. Raymond, Esq.
Reed Smith, LLP
599 Lexington Avenue
New York, New York  10022

Andrew H. Bart
Tel  212 891-1645
Fax  212 891-1699
abart@jenner.com

   Re: *Custard with Atlantic Recording Corporation*

Dear Mr. Raymond:

  We have been retained by Atlantic Recording Corporation ("Atlantic") to respond to your letter of June 12, 2007 to Michael Kushner and Paul M. Robinson. In that letter you assert claims on behalf of your client Custard, a California corporation ("Custard"), based on the accountings rendered to it relating to the exploitation of the sound recordings of James Blunt ("Blunt") by Atlantic. Most of these claims arise from the fact that Atlantic (as the Assignee of Custard) and Blunt renegotiated the agreement between Custard and Blunt dated as of September 30, 2003 (the "Artist Term Contract") in a manner that resulted in the reduction of the royalty rate paid to Custard.[1] While the renegotiation and resulting reduction in Custard's rate did occur, they were expressly contemplated and authorized by the agreement between Atlantic's predecessor, Elektra Entertainment Group Inc. ("EEG") and Custard dated as of September 30, 2003 (the "Label Agreement").

  The simple and dispositive response to the claims asserted in your letter is that pursuant to paragraph 9A(a) of the Label Agreement, Atlantic had an absolute right to renegotiate the royalty terms of an Artist Term Agreement (such as Blunt's) and thereby increase the Artist's Share of Royalties without seeking any input or approval from Custard. That paragraph of the Label Agreement does limit Atlantic's right to use such a renegotiation to reduce the Production Share of Royalties below 4% without Custard's consent. The renegotiation as concluded between Atlantic and Blunt did not result in a reduction of the Production Share of Royalties below 4%. Both the renegotiation of the Artist's Share of Royalties and the reduction of the Production Share of Royalties were expressly authorized acts under the Label Agreement and did not require approval from Custard.

  Second, your argument that paragraph 3(a) of Appendix A of the Label Agreement imposes a 15.1% ceiling on royalties to be paid to an artist is demonstrably false. Appendix A sets forth terms that limited Custard's right to negotiate artist's agreements that it intended to assign to EEG; *i.e.*, this provision was a limitation on Custard's discretion and was drafted for EEG's benefit. As stated above, the only limit was that any such increase could not result in a reduction of Custard's royalty below the 4% floor set forth in paragraph 9A(a) of the Label

---

[1] Your letter erroneously asserts that, but for the renegotiation, Custard's royalty rate in the U.S. would be 7.1%. However, due to the level of sales on Mr. Blunt's album, the artist's royalty escalated from 13% to 14% and Custard's share was accordingly reduced to 6.1%. Similar escalations of Blunt's royalty and reduction of Custard's royalty have occurred in other territories.

10166

Peter D. Raymond, Esq.
July 3, 2007
Page 2

Agreement. Accordingly, your attempt to rely on the Appendix to fabricate a contractual 5% floor for royalty payments to Custard flies in the face of the express terms of paragraph 9A(a) of the Label Agreement and is thus completely unfounded.

Perhaps recognizing that your client's claims are inconsistent with the plain and obvious language of the Label Agreement, you instead resort to a combination of name calling and frivolous accusations. Most offensive are your repeated allegations of bad faith and your baseless accusation that Atlantic engaged in "self-serving enrichment." At all times, Atlantic's actions were completely consistent with and authorized by the Label Agreement. Paragraph 9A(a) of the Label Agreement was specifically intended to cover a situation where the success of an artist justified a renegotiation, and provided protection for Custard by limiting the extent to which EEG was permitted to utilize Custard's Production Share in connection with such a renegotiation. EEG only entered into renegotiation discussions with Blunt after he was well on his way to being a worldwide multi-platinum artist, and in the process incurred additional financial risk which did not in any way impact Custard. Moreover, the *entire* amount of the royalty reduction to Custard went to Blunt (as contemplated by the Label Agreement). Your allegation of "self-serving enrichment" was made without the slightest evidentiary basis – and thus taints the credibility of your entire presentation.

In addition, you cannot demand to enter into a good faith negotiation with respect to a "net proceeds interest" under paragraph 8 of the Label Agreement. The rights under paragraph 8 required that the target Net Sales be achieved and that a request for a negotiation be made during the Term of the Label Agreement. Pursuant to the Termination Agreement between EEG, Custard and Linda Perry dated as of July 1, 2004 (the "Termination Agreement") that Term ended on July 1, 2004. Manifestly, neither pre-condition was met by that date. Furthermore, your "demand" proceeds from the faulty premise that the paragraph 8 right "was not extinguished by the parties in any document." However, the Termination Agreement expressly provides that Custard releases EEG from all claims (including future claims) based on the Label Agreement except for the specific obligations which survive the termination of the Term of the Label Agreement. Custard's paragraph 8 rights did not survive the termination of the Term.

Finally, your accusation that Atlantic has frustrated the audit process is similarly without merit. Not only did EEG comply with the audit provisions contained in the Label Agreement, EEG voluntarily accommodated your client's desire to audit both the UK and US companies' books and records, and has provided all information it was contractually obligated to provide.

The foregoing is without prejudice to my client's rights and remedies which are expressly reserved.

Sincerely,

*Andrew H. Bart* /s/ (AHB)

Andrew H. Bart

AHB:ab

10166